IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, | ) | |
| Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00381-HFS |
| | ) | |
| LOCAL 41, INTERNATIONAL | ) | |
| BROTHERHOOD OF TEAMSTERS, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This action is brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481-48 for a judgment declaring the November 16, 2017, election of union officers conducted by Local 41, International Brotherhood of Teamsters void and directing the union to conduct a new election for these offices under the Secretary's supervision. (Doc. 1). The Secretary[1] contends that it is entitled to summary judgment on Count I of its complaint because the undisputed material facts establish that the Union violated 29 U.S.C. § 481 (c) by failing to provide adequate safeguards to insure a fair election.[2] (Doc. 15). Local 41 opposes the motion, arguing that there are disputed questions of material fact and that it is entitled to additional discovery. (Doc. 19).[3]

**Summary Judgment Standard.**

---

[1] When this action was filed, R. Alexander Acosta was the Secretary of Labor. Following Acosta's resignation, Patrick Pizzella was named acting Secretary of Labor, and accordingly is substituted as the party plaintiff. Fed. R. Civ. P. 25 (d).
[2] Count II of the complaint alleges that Local 41 improperly promoted the candidacy of one slate of candidates in violation of 29 U.S.C. § 481 (g) (Doc. 1). The remedy for both violations is the same.
[3] Discovery was scheduled to close in February of last year. (Doc. 13). Following the Reply Brief plaintiff filed certain responses, (Doc. 23) which defendant does not ask me to consider as pertinent here. No discovery disputes have been presented to the court.

Under Federal Rule of Civil Procedure 56 (c), summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. A non-material factual dispute is insufficient to prevent the court from granting summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making its determination, the court reviews all evidence in the light most favorable to the non-moving party. Id. at 255.

**Undisputed Facts.**

For the purpose of summary judgment, the Court finds the facts to be as follows. Facts controverted or that are immaterial to the Court's ruling have been omitted.

Local 41 is a local labor union and at the time of its election of officers had approximately 6200 members employed by approximately 100 employers around the Kansas City area. (Doc. 19 ¶ 2). Local 41's November 16, 2017, election included three slates: (1) Teamster Power slate, led by Butch Gardner; (2) Teamsters LaCroix slate lead by Keith LaCroix, and (3) Stubbs Team 41 led by Ralph Stubbs. (Doc. 15 ¶ 3).

On October 24, 2017, Local 41 mailed ballot packages to all 6200 members in good standing. (Doc. 15 ¶ 6). Shortly after mailing the ballot packages, Local 41 learned that there was a problem with the ballot return envelopes, and that some of the voted ballots were being returned by the post office to the members, not the post office box for the union office. (Doc. 15 ¶¶ 7-9).

Upon investigation, the union learned that the post office was returning the business reply envelopes to the members' home addresses because of a printing error on the business reply envelope. (Doc. 15 ¶ 8). On November 8, 2017, the United States Postal Service sent an email to the Union president stating: "[a]ll Business Reply envelopes are supposed to have a barcode on them so that we can process them on our automated equipment. So whoever created this Business Reply envelope made a serious error in not putting a barcode on it." (Doc. 15-9). According to the Post Office, because the front of the envelope did not have a barcode the post office's automated equipment was reading the barcode on the back of the envelope and "looping" the business reply envelope back to the sender. (Doc. 15 ¶¶ 8, 9) (Doc. 15-9).

2

This barcode printing error resulted in some of the voted ballots being returned to members' home addresses and some being delivered to the union after the voting deadline. (Doc. 15 ¶ 8, 9) (Doc. 19 ¶9).

After Local 41 consulted with the post office, it tried to fix the problem. John Thompson, the Union vice-president, posted on Local 41's private Facebook group, informing members that it knew that the Post Office had returned some ballot envelopes to members, and advising members that if the post office returned their voted ballot, the member should draw a line through their address on the back of the return ballot envelope and re-mail it. (Doc. 15 ¶10) (Doc. 19 ¶10) (Doc. 19-8). On November 4, John Thompson made a second post to the Union Facebook group, advising members who received their voted ballot back to re-mail it or hand deliver it to the post office. (Doc. 15 ¶ 11) (Doc. 19 Ex. 2). He also posted that the ballot "will not be thrown out as long as it can still be read for verification . . . [and to] call the Union officers if you have any questions . . . [or] if a replacement ballot is needed." (Doc. 19 ¶11). At the time of the November 16, 2017, election, there were only approximately 900 members in the Local 41 Facebook group. (Doc. 15 ¶12).

On November 7, 2017, Local 41's attorney, Mike Amash, notified the candidates about the barcode problem, stating he would forward any correspondence he received about the issue. (Doc. 15 ¶ 15). The Union also notified the 175 Stewards of the barcode problem and how to fix the return envelope, which according to the union, is its usual way to spread information to its members. (Doc. 19 ASOF ¶11).

Local 41 received approximately 1900 voted ballots out of a maximum of some 6200 by the November 16, 2017, voting deadline. (Doc. 15 ¶19). According to Local 41, 23 ballots were set aside as challenged because the voter names were illegible, or the addresses were crossed out. (Doc. 19 SOF ¶20). Local 41 explains that because the lowest margin of victory was 220, there was no reason to count the 23 challenged ballots. (Id.). After the election tally deadline, Local 41 received an additional 160 ballots. (Doc. 15 SOF ¶¶ 25, 26). Local 41 does not dispute that 160 ballots were received late, but states that because the Secretary confiscated the ballots it has not had a chance to review the ballots, and that due to the margin of victory, the 160 ballots would not change the outcome of the election. (Doc. 19 SOF ¶26).

A complaint was filed in accordance with section 402(a)(2) of the Act. The Secretary investigated and found probable cause to believe a violation of Title IV of the Act occurred in the election of Local 41's

officers. Specifically, the Secretary concluded that there was probable cause to believe that Local 41 failed to adequately remedy the barcode/envelope issue by failing to notify the entire membership of the envelope printing problem and by failing to extend the voting deadline. (Doc. 15 ¶29) (Doc. 15 -14).

The Secretary filed this action and now seeks summary judgment that Local 41 violated 29 U.S.C. § 481(c) by failing to provide adequate safeguards for the election. Specifically, the Secretary alleges that Local 41 did not ensure that voted ballots would be returned to Local 41 for tally and Defendant failed to notify members of the correct procedure for mailing their ballots to the union for tallying. Local 41 responds that this court should deny the motion as premature and allow additional discovery. It further asserts that there are disputed questions of fact as to whether it reasonably responded to the barcode issue and whether the barcode issue affected the election.

**The Labor-Management Reporting and Disclosure Act (LMRDA).**

When conducting an election, the LMRDA requires a union to provide "[a]dequate safeguards to insure a fair election." 29 U.S.C. § 481(c). Proof of a violation of the "adequate safeguards" provision is *prima facie* evidence that the violation "may have affected" the outcome of the election, shifting the burden to the union to prove that the results of the election would have been the same absent the violation. Solis v. Amalgamated Transit Union, Local 1005, 638 F.3d 956, 958 (8th Cir. 2011) *citing* Wirtz v. Hotel, Motel & Club Emps. Union, Local 6, 391 U.S. 492, 506–07 (1968). If the Secretary proves by a preponderance of evidence that a violation of the "adequate safeguards" provision has occurred, and if that violation "may have affected the outcome of an election," the court must declare the election void and order a new election under the Secretary's supervision. Id.

**Adequate Safeguards.**

The Secretary contends that Local 41 violated the "adequate safeguards" provision by failing to ensure union members were able to return their voted ballots. The regulations specifically provide: "A union's failure to provide voters with adequate instructions for properly casting their ballots may violate the requirement of adequate safeguards to insure a fair election." 29 CFR § 452.110(b).

4

Here, the parties agree that the ballot return envelopes were incorrectly printed, resulting in some of the voted ballots being returned to the member instead of being received by the union for tallying.  Indeed, Local 41 acknowledges that "in all future elections, [it] will ensure that the proper barcode is affixed to the return envelope."  (Doc. 19 ASOF ¶ 18).    Nevertheless, Local 41 argues that summary judgment is not appropriate because there is a question of fact as to whether it took reasonable steps to correct the error, and whether the error affected the election results.

Local 41 contends that the Eighth Circuit interprets section 481(c) narrowly, and that in conducting an election, it must "(1) treat all candidates equally; and (2) provide intelligible instructions."  (Doc. 19, p. 13) citing Solis v. ATU Local 1005, 638 F.3d 956, 958 (8th Cir. 2011).    The union argues that "perfection" is not required, and that the corrective measures it took to address the barcode problem creates a genuine issue of fact for ruling after trial as to whether it provided adequate instructions.

Even under Local 41's permissive interpretation, there is not a genuine issue of fact as to whether "intelligible instructions" were provided.  Local 41 concedes that there was a problem with the return envelopes and that the post office returned voted ballots to members. That the union then posted instructions on Facebook with quite limited membership and also told candidates and stewards how to rectify the problem does not create a factual issue as to whether intelligible instructions were provided. First, it is undisputed that the Facebook group consisted of 900 members, less than 15 percent of the union's membership. See Dole v. Local Union 317, 711 F.Supp. 577, 580 (M.D. Ala. 1989) (union failed to show that the alternative means of notice proved effective). Second, the Thompson advice as to correcting the problem was confusing as the member needed to cross out the barcode, not the address.  Although it is true that the members could call a steward or candidate if they had a question, after receiving returned mail, this measure placed the responsibility for election procedures on the member, not the union.   See Perez v. Amalgamated Transit Union Local 1700, 174 F.Supp.3d 395, 404 (D.D.C. 2016) ("when a union learns that it has mailed a ballot to an incorrect address during the course of an election, it must take reasonable steps to mail a ballot to the most up-to-date address known to the union.")

The barcode problem here is different than the problem considered in Solis.  638 F.3d at 956. In the Solis election, the local union had posted notices about a nomination meeting that incorrectly cited an

5

article of the bylaws that contained an outdated, unenforceable meeting requirement.   Id. at 958. The posted written notice was accurate and did not mention the inapplicable meeting attendance requirement. Nevertheless, a few members expressed confusion about whether the membership requirement applied, and they were informed accurately that it did not.  The Eighth Circuit concluded that the union did not violate the adequate safeguard provision because the notice itself was accurate and any member who was confused received clarification that the meeting requirement did not apply.  Here, the barcode problem potentially affected all returned ballots and the union's corrective efforts were only communicated to a limited group of members.

The circumstances here are closer to those found  violative in Dole v. Local Union 317, 711 F.Supp. 577 (M.D. Ala. 1989), when the court entered summary judgment for the Secretary because the voting instructions were mailed one month before the members received the ballot and "[t}he union should have realized the substantial possibility that members would misplace, throw away, forget, or simply neglect, the instructions by the time they received the ballot." Id. at 581.   Like here, the voting procedure itself was problematic.   See also Brock v. District 6, United Mine Workers, 772 F.2d 905 (6th Cir. 1985) (unpublished) (adequate safeguards provision violated when notice did not fully and accurately inform members of election procedures).

The union also asserts that additional discovery is necessary before ruling on this motion. (Doc. 19 p. 11). It argues that it is entitled to a "full explanation of what happened with the barcode issue from the Post Office . . .  and why the USPS classified the issue as 'serious.'"  (Doc. 19, p.11).  Additional discovery is untimely and unnecessary, however, as there is no dispute that the return envelopes were incorrectly printed and that this resulted in some voted ballots being returned to senders.  Local 41 concedes that "the solution to the barcode issue is simple: print ballots with the correct barcode on them." (Doc. 19, p.21). Any further explanation that might be provided by the Post Office would not alter the analysis.

**Election Results.**

The union next argues that the Secretary is not entitled to summary judgment because there is a dispute of fact as to whether the Secretary has shown that the election results were affected, and that it is entitled to additional discovery as to the election results.   Local 41 premises this argument on its belief

6

"that the barcode issue affected ballots at random," and so the "affected ballots that were delayed or lost would not have affected the outcome of the election." (Doc. 19, p. 15). Local 41, however, presents no evidence to support this belief, and thus, the argument is dismissed as conjecture.

Likewise, additional discovery learned from the confiscated 160 ballots would not help Local 41's position because once the Secretary has met its burden of showing a safeguard violation, the relevant inquiry is whether the problem **may** have affected the election. 29 U.S.C. § 482. The Secretary is only required to prove that there is a "reasonable probability" that the established violation "may have affected" the results of the election, not that election results were actually affected. Chao v. Local 54, Hotel Employees and Restaurant Employees Int'l Union, 166 F. Supp.2d 109, 124 (D.N.J. 2001) (citing Wirtz v. Local 153, Glass Bottle Blowers Ass'n, 389 U.S. 463, 474 (1968). Effect is presumed from a violation unless the union meets its evidentiary burden to produce "tangible evidence" that the election would not have been different absent the violation. Hotel Employees Union Local 6, 391 U.S. at 507-08.

Similar to an argument rejected in Dole v. Local Union 317, 711 F.Supp. 577, 582 (M.D. Al. 1989), the union asserts that the corrective efforts it took minimized any effect the barcode problem had on the election and creates a question of fact as to whether the barcode problem may have affected the election results. Local 41 fails to provide evidentiary support for this statement however, acknowledging that "it fielded calls from approximately dozens (sic) members concerning the barcode issue." (Doc. 19 ASOF ¶12; Doc. 19-7). In addition, as pointed out by the Secretary, Local 41's position is problematic in that there is no reliable method for ascertaining the number of voted ballots returned to the member and not re-mailed. An affidavit was also filed which stated that "Local 41 did not pick up any mail from its post office box after November 21, 2017, and that the post office box officially closed on February 11, 2017." (Doc. 22-1). Thus, there is no way to discern how many ballots may have been returned late. Local 41's reliance on statistical analyses sometimes used in voting rights cases is not persuasive as in LMRDA cases, results are typically analyzed using the "maximum theoretical possibility" See Dole v. International Broth. Of Teamsters, Chauffeurs Warehousemen and Helpers of Am. Local 996, AFL-CIO, 1990 WL 251022, at * 9 (D. Ha. 1990).

7

Even if one might guess that a sample count approaching a four to three victory is not likely to be overturned by the great number of missing potential voters, the result is speculative. [4]

The Union also contends that summary judgment should not be entered because it did not act with malice, and the barcode error will be corrected in the next election. However, malice is not part of the inquiry and acting in good faith will not immunize the union from liability. See <u>DeArment v. Local 563, Laborers Int'l Union of N. Am. AFL-CIO,</u> 751 F. Supp. 1364, 1365 (D. Minn. 1990) (failure to remove name of deceased candidate from ballot violated adequate safeguards requirement despite union's "best intentions").

The LMDRA unequivocally states that, if a court finds a violation of section 481 that may have affected the outcome of the election, it shall declare the election to be void and direct the conduct of a new election under supervision of the Secretary and as far as practicable, in conformity with the constitution and bylaws of the labor organization. 29 U.S.C. § 482 (c). For the reasons stated above, the court grants Plaintiff's motion for Summary Judgment on Count I of its complaint. (Doc. 15). The November 16, 2017, election is hereby declared void and a new election under the supervision of the Secretary of Labor is hereby ORDERED. The court will retain jurisdiction of this matter until a new election is held. The parties are directed to file a status report within NINETY Days of this Order.

 _/s/  Howard F. Sachs_____
 Howard F. Sachs
 United States District Court Judge

February 10, 2020
Kansas City, Missouri

---

[4] The presidential winner with 860 votes did not have an absolute majority, and a new election might result in a defeat if the two losers (with 638 and 349) somehow combined. This distorts the elective process but is simply the result of current legal requirements.

8